IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | |
| FRANCISCO LEOPOLDO ZAVALA, ) | 1:17-cr-00015 (LMB) |
| ) | 1:17-cv-984 (LMB) |
| Movant. ) | |
| ) | |
| ) | |

MEMORANDUM OPINION

Leopoldo Francisco Zavala ("Zavala" or "movant"), has filed a pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Motion to Vacate") [Dkt. No. 41], in which he appears to raise five issues. First, he alleges that he is actually innocent of the charge to which he pleaded guilty and that the Court erred in calculating his sentence because he should have received a downward departure based on the weight of cocaine found in his possession. Further, he claims that he received ineffective assistance of his counsel, Assistant Federal Public Defender Shannon Quill, and that the outcome of his case would have been different but for the guilty plea. He contends that he was never advised of the possibility of receiving a mandatory minimum sentence; rather his lawyer lied about the ability of the Court to issue a sentence over 46 months. Finally, he argues that he was never advised of his constitutional right to appeal. For the reasons that follow, the Motion to Vacate will be summarily dismissed.[1]

---

[1] Under Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts:
> The judge who receives notice of the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that

## I. BACKGROUND

On January 26, 2017, a grand jury returned an indictment charging Zavala with conspiracy to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 846 and 841 (Count 1); conspiracy to import cocaine in violation of 21 U.S.C. § 963 (Count 2); and possession with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 841. Indictment [Dkt. No. 13], Jan. 26, 2017. On March 8, 2017, Zavala appeared with counsel and pleaded guilty under a written plea agreement only to Count 1. Id. ¶ 3. In exchange for that plea, the remaining charges were dismissed. Id. As part of the written plea agreement, Zavala also signed a Statement of Facts under the penalty of perjury in which he admitted that he conspired to unlawfully, knowingly and intentionally distribute five hundred grams or more of cocaine in the northern Virginia area and participated in four different sales of cocaine ranging in quantity from 28 to 56 grams to a confidential source ("C.S.") working with law enforcement. Statement of Facts ¶¶ 1, 3-6 [Dkt. No. 30]. In addition, he admitted he was found in possession of approximately 1 kilogram of cocaine with the intent to distribute it to the C.S. on December 3, 2016. Id. ¶ 7

Zavala was sentenced on June 9, 2017 to 60 months of incarceration, with credit for time served followed by four years of supervised release among other penalties. [Dkt. No. 38]. This sentence was the statutory mandatory minimum for this offense. See 21 U.S.C. § 841(b)(1)(B)(ii). No appeal was filed; however, Zavala timely filed his Motion to Vacate on August 31, 2017.

---

the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party.

## II. DISCUSSION

### A. **Standard of Review**

A motion to vacate under 28 U.S.C. § 2255 provides for collateral attack on a conviction or sentence when the conviction or sentence was imposed in violation of the United States Constitution or laws, when the court lacked jurisdiction to impose the sentence, when the sentence was in excess of the maximum authorized by law, or when the conviction or sentence is otherwise subject to a collateral attack. See 28 U.S.C. § 2255(a). To prevail on a § 2255 motion, a movant bears the burden of proving his grounds for collateral relief by a preponderance of the evidence. See Jacobs v. United States, 350 F.2d 571, 574 (4th Cir. 1965).

Relief under § 2255 is designed to correct for fundamental constitutional, jurisdictional, or other errors, and it is therefore reserved for situations in which failing to grant relief would be "inconsistent with the rudimentary demands of fair procedure or constitute[ ] a complete miscarriage of justice." United States v. Vonn, 535 U.S. 55, 64 (2002) (quoting United States v. Timmreck, 441 U.S. 780, 783 (1979)). A § 2255 motion "may not do service for an appeal," and claims that have been waived are therefore procedurally defaulted unless the movant can show cause and actual prejudice. United States v. Frady, 456 U.S. 152, 165-67(1982); however, an exception applies when a defendant brings a claim of constitutionally ineffective assistance of counsel. See United States v. Gastiaburo, 16 F.3d 582, 590 (4th Cir. 1994).

Under § 2255(b), a movant is to be granted an evidentiary hearing on his motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Summary dismissal of § 2255 allegations is "warranted only if a habeas petitioner's allegations when viewed against the record of the plea hearing are palpably incredible or patently frivolous or false." United States v. White, 366 F.3d 291, 297 (4th Cir.

3

2004) (quoting Blackledge v. Allison, 431 U.S. 63, 76 (1977)). Because a § 2255 motion "is ordinarily presented to the judge who presided at the original conviction and sentencing of the prisoner," that judge may take into account her "recollection of the events at issue" when deciding whether to summarily dismiss it. See Blackledge, 431 U.S. at 74 n.4.

### B. **Actual Innocence**

Zavala asserts that he is not guilty of the crimes for which he was charged and "was coerced to plead." Motion to Vacate at 5. To the extent Zavala is claiming actual innocence, this claim is totally inconsistent with the Statement of Facts he signed, his sworn statement during his plea colloquy, and his statement to the probation office.

In addition to signing the written Statement of Facts in which he admitted to being part of a conspiracy to unlawfully distribute five hundred grams or more of cocaine, to participating in four sales of cocaine to a C.S. working with law enforcement, and to being found in possession of one kilogram of cocaine, see Statement of Facts [Dkt. No. 30], during his plea colloquy, he admitted his guilt.

> THE COURT: Now, do you agree that on July 19, 2016, you sold approximately 28 grams of cocaine to somebody who actually was working for law enforcement in Arlington, Virginia, for $1,300?
> THE DEFENDANT: Yes.
> …
> THE COURT: And how much were you paid to do that?
> THE DEFENDANT: For the four occasions, I got $700.
> THE COURT: That's the total amount you got?
> THE DEFENDANT: Yes.
> THE COURT: When you say four occasions, though, we have a date of August 20, 2016 in Woodbridge, Virginia; is that correct?
> THE DEFENDANT: Yes.
> THE COURT: All right. And then we have an October 15 and an October 29. So four total sales, correct?
> THE DEFENDANT: Yes.
> THE COURT: So if I understand it correctly then, each time, it was your friend who asked you to deliver cocaine to somebody who was acting as a government informant?
> THE DEFENDANT: That's correct.

4

>    THE COURT: All right. And did you understand that that was against the law?
>    THE DEFENDANT: Yes.

Plea Hr'g Tr. at 22:13-16; 23:5-22. Zavala also admitted his guilt a second time, before his plea was accepted.

>    THE COURT: Do you claim in any respect you're innocent of this charge?
>    THE DEFENDANT: No.

Plea Hr'g Tr. at 25. Moreover, Zavala continued to accept responsibility for his actions during the presentence investigation by submitting the following statement to the Probation Office:

> I admit that I agreed with others to sell cocaine, and in fact sold cocaine as described in the statement of facts. I obtained the cocaine for the four sales to the confidential informant from one source, and I obtained the kilogram of cocaine that I had at the time of my arrest from another source in South Carolina. I realize that what I did was very serious, and that I will not be able to stay in this country due to my actions.

Presentence Report ("PSR") at 6 ¶ 24 [Dkt. No. 32]. Based on this acceptance of responsibility, Zavala's offense level was reduced by two levels for acceptance of responsibility under U.S.S.G. § 3E1.1(b). Id. at 7 ¶ 33. This decrease resulted in the offense level of 26 being lowered to 23,[2] and the applicable sentencing guideline range being lowered from 63 to 78 months to a range of 46 to 57 months. See U.S.S.G. Sentencing Table. Therefore, Zavala received a benefit from his acceptance of responsibility by receiving the lowest possible sentence he could, namely the mandatory minimum for the crime to which he pleaded guilty.

Zavala has not pointed to any new evidence suggesting that he is actually innocent of any of the crimes in the indictment. To succeed on a post-conviction claim of actual innocence, a movant "must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Schlup v. Delo, 513 U.S. 298, 327 (1995). Zavala has not made any statement that new evidence exists to support his claim of innocence. "Without any

---

[2] Zavala received an additional one level decrease for assisting authorities in the investigation and promptly notifying them of his intention to enter a guilty plea. PSR at 7 ¶ 34.

new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." Id. at 316. Accordingly, this ground is without merit.

### C. Sentencing Issues

Zavala also contests how his sentence was calculated. First, he appears to claim that the guideline range in his Presentence Report should have been "46-50 months." Motion to Vacate at 8. He also claims that there is a sentencing disparity between him and others charged with similar crimes. Finally, he argues that his sentence should be reduced because the weight of the cocaine was "less than 200 grams" and thus he should have received a lower sentence.

It is unclear on what Zavala bases his claim about the correct sentencing range. Both the Initial Presentence Report and the Final Presentence Report describe the guideline range as 46 to 57 months while explaining that there is a mandatory minimum of 60 months associated with his plea. See PSR at 10, ¶ 55 [Dkt. No. 31]; PSR at 10, ¶ 55 [Dkt. No. 32]. Further, the Fourth Circuit has held that "[b]arring extraordinary circumstances,... an error in the application of the Sentencing Guidelines cannot be raised in a § 2255 proceeding. Section 2255 provides relief for cases in which 'the sentence was in excess of the maximum authorized by law.'" United States v. Present, 190 F.3d 279, 283-84 (4th Cir. 1999). Zavala has failed to articulate a specific basis for finding errors in his sentence and has failed to identify any "extraordinary circumstances" that would justify collateral review of his sentence.

Moreover, Zavala received the statutory minimum sentence available under 21 U.S.C. § 841(a)(1) for this offense. To the extent there could be any reconsideration of his sentence, the

Court is statutorily barred from imposing anything less than the 60 month sentence.[3] Similarly, with respect to Zavala's argument that there is a disparity between his sentence and sentences imposed on similarly situated defendants, he has not alleged any specific examples of a non-cooperating defendants, charged with the same type of conspiracy, who receivied a shorter sentence.

Finally, Zavala's claim that his sentence was incorrect because he should only have been charged with conspiracy to distribute less than 200 grams of cocaine is completely contradicted by the record in which among other facts, Zavala admitted that when he was arrested he had one kilogram of cocaine in his car. See PSR at 4 ¶ 10. Moreover, during his plea colloquy Zavala admitted being in possession of one kilogram of cocaine.

> THE COURT: Now, [the Statement of Facts] says in paragraph 7 that on December 3, 2016, in Prince William County, you possessed 1 kilogram of cocaine. Is that correct?
> THE DEFENDANT: That's correct.
> THE COURT: And did the same friend give you that 1 kilogram to deliver?
> THE DEFENDANT: That's correct.

Plea Hr'g Tr. at 24. Therefore, there is no basis for reducing his sentence and this claim will also be dismissed.

---

[3] Zavala's plea agreement did not include a cooperation agreement, and Zavala's counsel specifically stated during his colloquy that "Mr. Zavala did not wish to cooperate" with the government. Plea Hr'g Tr. at 8:17-25. Therefore Zavala is unable to take advantage of the Federal Sentencing Guidelines "safety valve" provision, which allows a court to impose a sentence within the guideline range without regard to any statutory minimum sentence. U.S.S.G. § 5C1.2. This provision requires a defendant to meet five specific requirements, including "truthfully providing to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." United States v. Beltran-Ortiz, 91 F.3d 665, 667 (4th Cir. 1995). Because Zavala declined to identify any of his coconspirators or cooperate with any government investigation he could not avail himself of this provision to potentially get a lower sentence.

### D. Ineffective Assistance of Counsel

To establish an ineffective assistance of counsel claim, Zavala must show both that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficient performance occurs when "counsel's representation fell below an objective standard of reasonableness." Id. at 688. A movant can show prejudice when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A mere showing that "the errors had some conceivable effect on the outcome of the proceeding" is not enough; a reasonable probability requires that the errors are "sufficient to undermine confidence in the outcome." Id. at 693, 694.

Where a movant pleads guilty, as Zavala did, he must meet a heightened burden of proving prejudice by showing that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 57-59 (1985); see also United States v. Dyess, 478 F.3d 224, 237 (4th Cir. 2007). Such movants must also "convince the [C]ourt that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010). In making this showing, Zavala's "subjective preferences, therefore, are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts." United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012).

During the plea colloquy, for which a court certified Spanish language interpreter translated all questions and answers, Zavala affirmed that he had enough time to review the plea agreement and had the opportunity to ask his lawyer all the questions he has about the agreement.

8

> THE COURT: Now, Mr. Zavala, do you think you've had enough time to carefully go over this plea agreement yourself and with your attorney?
> THE DEFENDANT: Yes.
> THE COURT: Did you ask your lawyer, Ms. Quill, questions about the plea agreement?
> THE DEFENDANT: Yes.
> THE COURT: And do you feel you've asked her all the questions you have about the plea agreement?
> THE DEFENDANT: Yes.
> THE COURT: And did Ms. Quill answer all of your questions to your satisfaction?
> THE DEFENDANT: Yes.
> ....
> THE COURT: Now, have you had enough time to explain everything you know about this case to Ms. Quill?
> THE DEFENDANT: Yes.
> THE COURT: Has she discussed with you the nature of this conspiracy charge and any ways in which you could possibly defend yourself against the charge if you continued with your not guilty plea and went to trial?
> THE DEFENDANT: Yes.

Plea Hr'g Tr. at 6:16-7:3; 16:22-17:4. Importantly, under Fourth Circuit precedent, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." Fields v. Attorney Gen., of Md., 956 F.2d 1290, 1299 (4th Cir. 1992); United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) ("In the absence of extraordinary circumstances ..., allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false.") (internal quotation marks omitted). As the Supreme Court has explained,

> [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 74 (1977).

9

1. Counsel's Lies about Potential Sentencing

Zavala alleges several theories in support of his ineffective assistance of counsel claim, including that "mandatory minimum sentence was never spoken of" and that his lawyer lied about his potential sentence by telling him the Court could not sentence him to more than 46 months. Motion to Vacate at 5. These claims are again contradicted by the plea colloquy, in which the Court twice explained the sentencing range to which Zavala was exposed and warned him that no matter what his counsel may have said about his sentence, such statements were not binding on the Court. Plea Hr'g Tr. at 14:20-15:2. Further, the Court clarified that there was no guarantee that any estimate he had been given, by either his lawyer or the prosecutor, would be imposed.

> THE COURT: I want to make sure you understand that no matter what your lawyer may have told you she thinks your final sentence may be or if the prosecutor, Mr. Peters, has given you some idea of what sentence you're looking at or the agents or anybody else, none of those discussions is binding on the Court, and so if at your sentencing hearing you receive a sentence that is different from what you might be expecting or hoping for, that is not a violation of your plea agreement, and it would not give you a basis to withdraw your guilty plea. Do you understand that?
> THE DEFENDANT: Yes.

Id. at 15:3-13.

As to not being informed about the statutory mandatory minimum sentence, this claim is directly contradicted by both the written plea agreement[4] and the plea colloquy in which Zavala was twice informed that he faced a statutory mandatory minimum of five years.

> THE COURT: [L]et's turn to page 1, paragraph 1 of the plea agreement. There it says you've agreed to plead guilty to Count 1 of the indictment, which charges you with being a member of a conspiracy to distribute 500 grams or more of a substance containing a detectable amount of cocaine, which is a Schedule 2 controlled substance.
> Now, Mr. Zavala, that is a felony offense, and it exposes you to a mandatory minimum term of five years in prison with the possibility of as much as a forty-year sentence.

---

[4] Paragraph 1 of the Plea Agreement Zavala signed provided "The penalties for this offense include a mandatory minimum term of imprisonment of 5 years."

10

> That's the maximum. So you're looking at five to forty years of imprisonment. Do you understand that?
> THE DEFENDANT: Yes.

Plea Hr'g Tr. at 9:3-15. The Court reviewed the statutory mandatory minimum with Zavala a second time during the plea colloquy.

> THE COURT: [B]ecause this case involves a crime with a statutory mandatory minimum, because five years is 60 months, if the guideline range were below 60 months, the Court cannot sentence in the guideline range because it must sentence at least at that minimum of 60 months. Do you understand that?
> THE DEFENDANT: Yes.

Plea Hr'g Tr. at 13:18-22.

Given that Zavala's statements during the colloquy must be accorded a "strong presumption of validity," Blackledge, 431 U.S. at 74, the Court finds that Zavala has failed to make any showing that he was not adequately informed about the statutory minimum sentence.

   2. Failure to Advise of Rights to Appeal

Zavala also claims that he was never advised of his constitutional right to appeal his case "on direct appeal or any other form of appeals including this one under [§] 2255…" Motion to Vacate at 5. Although an attorney is required to follow an unequivocal instruction by his client to file a notice of appeal even if the defendant waived his right to appeal, see United States v. Poindexter, 492 F.3d 263, 269–73 (4th Cir.2007), here Zavala does not allege that he instructed his attorney to file an appeal, or even that he wished to file an appeal. Rather, he appears to allege that his attorney was ineffective for not consulting with him about an appeal before or after his sentencing hearing.

To the extent Zavala claims that he was unaware that he could file an appeal, his plea colloquy contradicts that claim. In contrast to this claim, Zavala was advised by this Court

multiple times that, by accepting his plea agreement, he was giving up his right to appeal both his conviction and his sentence.

> THE COURT: Normally a defendant in a criminal case has the right to appeal the sentence imposed on him, but under the terms of your plea agreement, and this is in paragraph 6, starting with the second sentence, with the word "nonetheless," as a condition of supervision – I'm sorry, as a condition of this plea agreement, you are giving up your right to appeal both your conviction as well as the sentence imposed as long as the sentence is not more than the statutory maximum.
> So that means as long as the Court does not sentence you to more than 40 years in prison followed by at least four years of supervised release and the fine is not more than $5 million and the special assessment is not more than $100, you cannot appeal that sentence for any reason. Do you understand that?
> THE DEFENDANT: Yes.

Plea Hr'g Tr. at 15. The Court gave Zavala a second explanation of his waiver of appeal rights, which Zavala confirmed he understood.

> THE COURT: And lastly, if you pled not guilty and went to trial and you were found guilty at trial, you could file an appeal of that finding of guilt to a higher-level court, and that court would review your trial. Again, do you understand under the terms of your plea agreement as well as the way the law is structured, by being found guilty based upon a guilty plea, you give up your right to appeal your conviction? Do you understand that?
> THE DEFENDANT: I understand.

Id. at 20:20-21:4.

In Roe v. Flores–Ortega, 528 U.S. 470, 480 (2000), the Supreme Court ruled that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." In interpreting *Flores–Ortega,* the Fourth Circuit has observed that "[i]n determining whether a rational defendant would have wanted to appeal, we consider important the facts concerning whether the defendant's conviction followed a trial or a guilty plea; whether the defendant received the sentence bargained for as part of the plea; and whether the plea expressly reserved or waived

some or all appeal rights." United States v. Cooper, 617 F.3d 307, 313 (4th Cir. 2010). A movant's acceptance of a guilty plea is "a highly relevant factor" in determining whether a failure to consult was professionally unreasonable, "because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." Id.

Here, Zavala fails to show that a rational defendant in his position would have wanted to appeal. In this case, Zavala knowingly entered into an advantageous guilty plea with the government, thereby reflecting a desire to terminate judicial proceedings. As discussed supra, both the written plea agreement and twice during the plea colloquy, Zavala was informed that he was waiving his right to appeal his conviction and any sentence unless the imposed sentence was greater than 40 years. This Court imposed a sentence of only 60 months, the lowest possible sentence that Zavala could have received for the crime to which he pleaded guilty and significantly lower than the statutory maximum of 40 years. In exchange for his guilty plea, the government also agreed to dismiss two additional charges against him. As a result, nothing in the terms and conditions of the sentence imposed on Zavala constitute a meritorious ground for appeal. Furthermore, nowhere in his motion to vacate does Zavala claim that he wanted to appeal or that he reasonably demonstrated to counsel that he was interested in an appeal nor does he claim that he ever explicitly asked his attorney about filing an appeal. Under these facts, a reasonable attorney was not required to consult with Zavala about the possibility of an appeal.

To the extent Zavala argues that he could not understand the information being given to him, such an argument also fails. A federally certified Spanish interpreter, Eva Desrosiers, was present throughout the plea colloquy and translated all questions and answers throughout the hearing. See Plea Hr'g Tr. at 2. Zavala raised no issues with his ability to understand the

13

proceedings at the time, and indeed participated actively throughout the colloquy. Moreover, should his claim be that he was never given the information about his appeal rights in writing, the plea agreement, which he signed and which the Court confirmed that he reviewed, discussed with his attorney, and understood, see Plea Hr'g Tr. at 6, states that he was knowingly waiving his right to appeal so long as the final sentence was within the statutory limits. Plea Agr. 4 ¶ 6. His attorney, Ms. Quill, affirmed that multiple versions of the plea agreement were reviewed with Zavala with the aid of a Spanish interpreter.

> THE COURT: Ms. Quill, you'll need to go on the record, explain how you went over the plea agreement with your client.
> MS. QUILL: Yes, Your Honor. At all times when meeting with Mr. Zavala, I had the assistance of a Spanish language interpreter. There were different versions of the plea papers, and at all times, they were reviewed with him with a Spanish interpreter.
> THE COURT: Are you satisfied that the interpreter translated word for word as best one can do the plea agreement for yo9ur client?
> MS. QUILL: Yes, Your Honor.

Plea Hr'g Tr. at 6. Given these circumstances, the Court declines to find either that Zavala was uninformed about his appellate rights or that his counsel's performance fell below an objective standard in this respect.

The Fourth Circuit has recognized that "[p]leading guilty generally involves a conscious decision to accept both the benefits and burdens of a bargain. That decision may not be lightly undone by buyer's remorse on the part of one who has reaped advantage from the purchase." Fugit, 703 F.3d 260 (4th Cir. 2012). As discussed supra, Zavala's subjective preferences are not germane to this inquiry; rather, to carry this heavy burden, Zavala must demonstrate that it would have been objectively reasonable for him to reject a plea agreement in favor of going to trial. Fugit, 703 F.3d at 260. Here, Zavala has clearly "reaped advantage from the purchase"; he stands convicted of one count of conspiracy to distribute cocaine as opposed to potentially one count of conspiracy to distribute cocaine, one count of conspiracy to

import cocaine, and one count of possession with intent to distribute 500 grams or more of cocaine. See Indictment [Dkt. No.13], Jan. 26, 2017. In exchange for his plea, the government dismissed the other two counts of the indictment and he received immunity from further prosecution for those other charges within the Eastern District of Virginia. Plea Agr. at 5 ¶ 9. Accordingly, he may not use what he believes is the benefit of hindsight to establish that he would not have accepted the benefits of pleading guilty but for his counsel's alleged ineffective assistance and that that decision would have been an objectively reasonable one. Therefore, all of his ineffective assistance of counsel claims will be dismissed with prejudice.

### III. CONCLUSION

For all the reasons stated above, Zavala's Motion to Vacate [Dkt. No. 41] will be dismissed by an appropriate Order to issue with this Memorandum Opinion.

Entered this 12th day of September, 2017.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge